IN THE UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| CHIBUIKE IGWENAGU AND BRANDON HASTINGS, *ON BEHALF OF THEMSELVES AND ALL OTHERS SIMILARLY SITUATED*,<br><br>Plaintiffs,<br><br>v.<br><br>BIMBO BAKERIES USA, INC. AND BIMBO FOODS BAKERIES DISTRIBUTION, LLC<br><br>Defendants. | Case No. 4:25-cv-40063 |

# **CLASS ACTION COMPLAINT**

## INTRODUCTION

1.  This is a class action brought by Plaintiffs Chibuike Igwenagu and Brandon Hastings ("Plaintiffs"), individually and on behalf of all others similarly situated, against Defendants Bimbo Bakeries USA, Inc. and Bimbo Food Bakeries Distribution, LLC (collectively, "Defendants" or "Bimbo") for violations of the Massachusetts Wage Act ("Wage Act"), M.G.L. c. 149, §§ 148, 148B, and 150, and M.G.L. c. 151, §§ 1A and 1B, as well as for unjust enrichment. Plaintiffs allege that Defendants misclassified them and other delivery drivers as independent contractors when they were, in fact, statutory employees under Massachusetts law.[1] Because of this misclassification, Defendants failed to pay Plaintiffs and class members overtime wages, made unlawful deductions from their wages, and failed to reimburse them for business expenses related to the delivery of Defendants' bakery products.

---

[1] The allegations in Plaintiffs' complaint are made on information and belief.

1

2.  Bimbo has known that it cannot meet its statutory burden under a Massachusetts' "ABC" independent contractor test.[2] Under similar ABC tests, as well as employment tests less stringent than the ABC test, Bimbo's delivery drivers classified as independent contractors have been found to be employees. *See*, e.g., Appeal No. 607476, N.Y. Unemployment Ins. Appeal Bd. (Oct. 15, 2020) (Bimbo Bakeries "is not able to overcome the presumption of employment required under the statute's ABC test")[3]; *see also Matter of Claim of Cowan*, 159 A.D.3d 1312, 1314, 73 N.Y.S.3d 653, 655 (2018) (affirming administrative board holding that Bimbo "exercised sufficient supervision, direction and control over claimant to establish an employer-employee relationship under common-law principles.").

3.  Notwithstanding Bimbo's failure to meet a similar ABC test in New York, or the Massachusetts Board of Revenue's publicly available opinion in a similar case involving an unnamed bakery company misclassifying delivery drivers, Bimbo has continued to willfully ignore compliance with the Massachusetts Wage Act. *See*, e.g., BR-108261-XA, MA Board of

---

[2]  Under the Massachusetts' Wage Act, individuals performing services are presumptively employees unless the presumed employer can prove all three parts of Massachusetts' conjunctive ABC test:

(A) the individual is free from control and direction in connection with the performance of the service, both under his contract for the performance of service and in fact; and

(B) the service is performed outside the usual course of the business of the employer; and,

(C) the individual is customarily engaged in an independently established trade, occupation, profession or business of the same nature as that involved in the service performed.

M.G. L. c. 149, § 148B (a).

This case concerns whether Plaintiffs and the putative class are entitled to the statutory protections under the Massachusetts Wage Act. It does not address whether Plaintiffs and the putative class are employees or independent contractors under other statutory or common law tests governing laws not at issue. Plaintiffs may well be employees under additional tests. However, the Court is only asked to decide whether the Plaintiffs and class are entitled the wage and hour protections under Massachusetts law.

[3]  Available at https://uiappeals.ny.gov/system/files/documents/2020/11/607476-appeal-decision.pdf (last accessed May 6, 2025).

Review (Mar. 10, 2010) (finding that the bakery distributor claimant's services were employment under Massachusetts' ABC test).[4]

4.  The willful nature of Bimbo's violations of the Wage Act are evidenced by it admittedly employing dozens if not hundreds of workers performing similar, if not identical, work to Plaintiffs and the putative class ("Class"). There are no material differences between the duties of Bimbo's admitted employees and its misclassified delivery drivers. Indeed, Plaintiff Hastings works in the same Wilmington, Massachusetts warehouse as admitted employees of Bimbo who typically receive full employment benefits that Bimbo deprives Plaintiffs and the Class.

5.  Plaintiffs bring this lawsuit and class action to remedy the legal violations committed by Defendants.

**PARTIES**

6.  Plaintiff Chibuike Igwenagu is an individual residing in Worcester, Massachusetts 01603. Plaintiff Igwenagu has worked as a delivery driver for Defendants from approximately November 2019 to present.

7.  Plaintiff Brandon Hastings is an individual residing at Dover, New Hampshire 03820. Plaintiff Hastings has worked as a delivery driver for Defendants from approximately January 2009 to present.

8.  Defendant Bimbo Bakeries USA, Inc. ("Bimbo Bakeries USA") is a corporation with a headquarters in Horsham, Pennsylvania 19044. Bimbo Bakeries USA produces bakery products that are distributed throughout Massachusetts and neighboring states. Bimbo Bakeries USA is registered to do business in Massachusetts and maintains substantial and continuous

---

[4]   Available at https://www.mass.gov/doc/br-108261-xa/download (last accessed May 6, 2025).

business operations in Massachusetts, including numerous warehouse facilities located throughout the Commonwealth where Plaintiffs and the putative class work.

9. Defendant Bimbo Food Bakeries Distribution, LLC ("Bimbo Distribution") is a corporate entity with headquarters in Horsham, Pennsylvania 19044. Bimbo Bakeries USA and Bimbo Distribution handle the delivery operations for Bimbo products and maintains substantial and continuous business operations in Massachusetts, including numerous distribution centers throughout the Commonwealth of Massachusetts.

10. Upon information and belief, Bimbo Distribution is a subsidiary of Bimbo Bakeries USA, and the two entities operate as a single integrated enterprise, sharing common management, interrelated operations, centralized control of labor relations, and common ownership and financial control. Bimbo Distribution was created to manage the delivery of Bimbo Bakeries USA products, but the two companies serve as a single statutory or joint employer for purposes of the claims in this complaint.

## JURISDICTION, VENUE, AND ADMINISTRATIVE PROCEDURE

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332(a) because there is complete diversity of citizenship between the parties and the amount in controversy exceeds $75,000, exclusive of interest and costs. Plaintiffs are citizens of Massachusetts and New Hampshire and Defendants are headquartered (principal place of business) in Pennsylvania.

12. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to Plaintiffs' claims occurred in this district, because Defendants conduct substantial business in this district, and because Defendants are subject to personal jurisdiction in this District. Plaintiff Igwenagu works out of Defendants'

warehouse facility in Millbury, Massachusetts. Plaintiff Hastings works out of Defendants' warehouse facility in Wilmington, Massachusetts

13. Plaintiffs filed a complaint with the Massachusetts Attorney General's Office before filing this lawsuit under M.G.L. c. 149, s. 150.

## FACTS

14. Defendants are in the business of distributing bakery products, including bread, pastries, and other baked goods, to retail stores, institutions, restaurants, and other food service establishments throughout Massachusetts.

15. Defendants distribute well-known brands including Arnold, Sara Lee, Thomas', Entenmann's, Stroehmann, Nature's Harvest, and many others.

16. Plaintiffs and other similarly situated individuals have worked as delivery drivers for Defendants, delivering bakery products from Defendants' warehouse and distribution facilities in Massachusetts to various customers of Defendants, including large retailers who contract directly with Bimbo for the delivery of Bimbo's products.

17. Defendants classified Plaintiffs and other delivery drivers as independent contractors (referred to by Bimbo as "Independent Distributors" or "IDs") for all purposes rather than employees.

18. Defendants pay Plaintiffs and other delivery drivers wages for delivering Bimbo products to retailers within a specific geographic territory or route. Defendants typically refer to its delivery drivers, including those it classifies and admits are employees, as servicing routes.

19. Plaintiffs receive a weekly paycheck from Defendants via direct deposit.

5

20. Defendants pay Plaintiffs and other similarly situated drivers' wages based on the amount and specific type of Bimbo products that are delivered and sold by Bimbo within the delivery drivers' routes.

21. ***Defendants admittedly employ*** other workers who perform the same or substantially similar delivery duties as Plaintiffs but classify them as employees rather than independent contractors. These properly classified employees work out of the same warehouse facilities as other misclassified workers in Massachusetts.

22. For example, Plaintiff Hastings presently works out of Bimbo's Wilmington, Massachusetts distribution facility along with other similar delivery drivers who Bimbo admits are employees and classified by Bimbo as such.

23. Bimbo actively advertises for job opportunities on its website for both admitted employees and for jobs with Bimbo as delivery drivers classified as independent contractors.

24. Upon information and belief, Bimbo's properly classified employees receive employment benefits that were denied to Plaintiffs and other misclassified drivers, including, but not limited to, health insurance, retirement benefits, paid time off, workers' compensation coverage, unemployment insurance, and reimbursement for business expenses.

25. Additionally, Bimbo Bakeries subjects its independent contracts to unlawful deductions that its admitted employees are not subjected to.  For example, if Bimbo's breads delivered by admitted employees go stale before sale, Bimbo does not deduct from its admitted employees the cost of this stale product.  Yet when Plaintiffs and similarly situated drivers classified as independent contractors deliver product that goes stale before sale, Bimbo makes unlawful deductions from Plaintiffs wages for "stales."

26. On information and belief, Bimbo Bakeries imposes numerous deductions on Plaintiffs and similarly situated drivers classified as independent contractors that it does not impose on admitted employees performing the same or nearly identical work in the Commonwealth of Massachusetts. Some of these deductions include, among other things, equipment (handheld) fees, allegedly damaged or lost product ("shrink") fees, route fees, and administrative fees.

27. There are no meaningful differences between the job duties, qualifications, or responsibilities of Defendants' properly classified employee drivers and the misclassified "independent contractor" drivers. Both groups of drivers: a) Deliver the Bimbo's bakery products; b) Use the same or similar facilities for loading their vehicles; c) Deliver to the same or similar retail customer locations; d) Follow the same core delivery protocols; e) Use the same or similar tracking and reporting systems; f) Are subject to discipline from Bimbo's managers; and g) Are subject to the same or similar quality control standards.

28. The only significant differences between these two groups are the classification status assigned by Defendants and the resulting compensation and benefits structure.

29. Despite Bimbo's classification of Plaintiffs and the putative class as independent contractors, Defendants exercise virtually unlimited control over Plaintiffs and IDs. For example, Defendants dictate all pricing of the products Plaintiffs deliver. Bimbo requires Plaintiffs and IDs to deliver products that are not profitable (and to stores that are not profitable). Bimbo employs supervisors who monitor their work including by traveling to the stores they deliver to evaluate their merchandising of Bimbo's products (consistent with Bimbo's written policies and merchandising "planograms") and discipline delivery drivers both in writing and

7

orally for failing to adhere to Bimbo's policies and standards (including threatening to terminate IDs whose work does not satisfy Bimbo's standards).

30. Bimbo, without any input from its delivery drivers or prior notice, has required delivery drivers to change assigned warehouse locations resulting in many drivers spending hundreds of additional hours per year working without any additional pay or overtime wages.

31. Bimbo, without any involvement from Plaintiffs or IDs, determines the price that Bimbo's customers (e.g., supermarkets or grocery retailers) must pay Defendants for its products that IDs are required to deliver for Bimbo.

32. Bimbo forces all IDs to sign similar if not identical so-called "Distributor Agreements" that purport to classify Plaintiffs and the putative class as independent contractors. These agreements nonetheless reserve significant and substantial control, including the right to dictate specific standards of work under the Agreement (which Bimbo does in fact).

33. Under Bimbo's Distributor Agreements and/or in fact, Bimbo: determines Plaintiffs' delivery routes and schedules, sets delivery windows and requires Plaintiffs to adhere to specific time constraints, requires Plaintiffs to promote Bimbo Bakeries USA brand logos on their delivery vehicles, requires Plaintiffs to follow specific protocols for handling, delivering, and merchandising of bakery products, requires Plaintiffs to use company-provided handheld devices to track deliveries, requires Plaintiffs to communicate with Defendants' managers about Bimbo's unliterally policies or promotional events, sets Plaintiffs' compensation rates without

negotiation, requires Plaintiffs to obtain Bimbo's approval to sell the routes they purportedly own,[5] and subjects Plaintiffs to performance evaluations and quality control measures.

34. Bimbo employs many distribution managers, many of whom work out of the same facilities in Massachusetts as Plaintiffs and the putative class, to supervise and manage Plaintiffs' work. Many of these managers have threatened delivery drivers with discipline, or issued discipline, to enforce Bimbo's policies and practices.

35. When retailers who contract with Bimbo for the delivery of product have issues with service, retailers contact Bimbo's managers directly. Bimbo's managers then exercise their managerial judgment, in Bimbo's discretion, before discussing the issue with the driver (including deciding whether to issue discipline to the driver).

36. Bimbo drivers are not allowed to upload products into their handhelds for delivery without the express approval from Bimbo's managers.

37. Bimbo's managers are employed directly by Bimbo Bakeries, USA and/or Bimbo Distribution and Bimbo's managers have the actual authority to hire, fire, and discipline drivers and regularly exercise and/or threaten that authority.

38. Bimbo Bakeries USA and Bimbo Distribution managers jointly determine, without input or negotiation with its delivery drivers, the manner and amount that it pays Plaintiffs and the putative class.

---

[5] Bimbo advertises "routes for sale" on its website and many IDs are required to pay to Bimbo a substantial sum of money to purchase purported "Distribution Rights" and a route from Bimbo. Many, if not most, IDs finance the purchase price of the routes through loans facilitated by Bimbo via a wholly owned subsidiary of Bimbo's parent company known as Advantafirst Capital Financial Services, LLC. Bimbo makes money off the interest on these loans and also deducts "route fees" from delivery drivers' pay to service these loans. When a driver wants to quit working for Bimbo, Bimbo requires them to sell their route, including by having Bimbo advertise it as available on Bimbo's website. Drivers are not allowed to stop working for Bimbo until Bimbo approves a sale for a replacement driver. If a driver attempts to stop working for Bimbo before Bimbo facilitates and approves the sale of the route, Bimbo charges the driver for its operation of the route. Bimbo often uses its control over the sale of its routes as a means to discourage delivery driver turnover and to maintain its workforce.

39. Bimbo Bakeries USA and Bimbo Distribution managers are jointly involved in assigning Plaintiffs work and making significant decisions impacting the economic realities of the relationship between the Bimbo Defendants and its delivery drivers. For example, the Defendants have jointly changed the warehouse assignments of delivery drivers and their routes without involving delivery drivers in the decision-making process.

40. Both Bimbo Bakeries USA and Bimbo Distribution maintain personnel and employment records related to delivery drivers' work, such as pay records and records related to delivery drivers' hours of work.

41. The work Plaintiffs and other delivery drivers perform fall squarely within Defendants' usual course of business and their work is integral to Defendants' baked goods distribution business, and Defendants also directly employ delivery drivers who perform the same work for Defendants but who are treated as W2 employees.

42. Plaintiff and other IDs are not engaged in independent businesses. Rather, the routes serviced by Plaintiffs and other IDs do not exist independent of Bimbo, Bimbo advertises the delivery route jobs on its website, Bimbo must interview and approve the hiring of Plaintiffs and other IDs, IDs work full-time, routinely well-beyond 40 hours per week, and many IDs have worked for Bimbo for years (such as the Plaintiffs).

43. Delivery of bakery products is essential to Defendants' usual course of business. Without delivery drivers like Plaintiffs, Defendants would be unable to get their products to customers and would have no viable business.

44. During their employment with Defendants, Plaintiffs regularly worked more than 40 hours per week.

45. Plaintiff Chibuike Igwenagu averaged approximately 50 hours per week working for Bimbo, while Plaintiff Brandon Hastings averaged approximately 50 to 60 hours per week.

Plaintiffs have often worked additional hours during holidays (e.g., Memorial Day) when Bimbo's business is typically busier.

46. Delivery drivers typically began their workday between 2:00 a.m. and 4:00 a.m., loading their vehicles at Defendants' warehouse facilities and/or visiting retailers on their route, and often worked until mid-afternoon, making multiple delivery and merchandising stops throughout the day. Plaintiffs and other delivery drivers typically work between 5 and 7 days per week, with even longer hours during holiday seasons when Bimbo's products are often in higher demand.

47. Defendants do not pay Plaintiffs and other delivery drivers overtime wages at a rate of one and one-half times their regular rate of pay for all hours worked more than 40 hours per week.

48. Plaintiffs and other delivery drivers incurred significant business expenses in the performance of their work for Defendants, including, but not limited to, fuel costs, vehicle costs, vehicle maintenance and repair expenses, and tolls and similar transportation fees, in the performance of work for Defendants.

49. Defendants failed to reimburse Plaintiffs and other delivery drivers for these business expenses, which were incurred primarily if not exclusively for Defendants' benefit.

50. Defendants' misclassification of Plaintiffs and other delivery drivers as independent contractors was willful and not in good faith. Defendants were aware of the legal requirements for properly classifying workers as independent contractors versus employees under Massachusetts law but deliberately misclassified Plaintiffs to reduce their labor costs and avoid their legal obligations.

51. Upon information and belief, Defendants have employed many other delivery drivers as independent contractors who performed the same or substantially similar job duties as Plaintiffs.

52. Defendants' misclassification of its delivery drivers as independent contractors and the other violations of Massachusetts law described above were willful and undertaken in bad faith because, among other reasons, delivery drivers who provide identical services as Plaintiff have been held to be employees of Defendants. Indeed, on information and belief, Bimbo and its predecessor companies have been found to be employers of its delivery drivers on several occasions, including under similar ABC tests and even under tests that are less stringent than Massachusetts' ABC test.

## CLASS ACTION ALLEGATIONS

53. Plaintiffs bring this action individually and as a class action, pursuant to Fed. R. Civ. P. 23, on behalf of a class defined as:

> All individuals who, either individually or through a corporate entity, personally deliver or have delivered Defendants' products as a delivery driver classified as an independent contractor (or Independent Distributor) during the relevant statutory periods and who have worked at one of Defendants' warehouse facilities in the Commonwealth of Massachusetts during the relevant statutory periods.

54. There are questions of law and fact common to the Class that predominate over any questions affecting only individual members, including, but not limited to, whether Defendants have misclassified Plaintiffs and the Class members for purposes of the Massachusetts Wage Act and unlawfully deprived them of wages and protections due under the Act.

55. Plaintiffs' claims are typical of the claims of the Class because Plaintiffs were subjected to the same unlawful practices as other Class members. Plaintiffs were misclassified as independent contractors, were not paid overtime wages for hours worked more than 40 hours per week, had unlawful deductions taken from their compensation, and were not reimbursed for business expenses.

56. Plaintiffs will fairly and adequately protect the interests of the Class. Plaintiffs have retained competent and experienced counsel in class action and employment litigation. Plaintiffs have no interests that are contrary to or in conflict with the interests of Class members.

57. A class action is superior to other available methods for the fair and efficient adjudication of this controversy because joinder of all members is impracticable. A class action will allow an orderly and expeditious administration of Class members' claims and economies of time, effort, and expense. Moreover, a class action will prevent the filing of numerous repetitive lawsuits and the risk of inconsistent judgments.

58. On information and belief, there are well beyond at least forty members of the Class.

59. Defendants have acted on grounds generally applicable to the Class, making appropriate final injunctive and declaratory relief for the Class as a whole.

**COUNT I: VIOLATION OF THE MASSACHUSETTS WAGE ACT AND OVERTIME LAW - FAILURE TO PAY OVERTIME WAGES**

60. Plaintiffs incorporate by reference paragraphs 1 through 59 as if fully set forth herein.

61. Massachusetts law, M.G.L. c. 151, §§ 1A and 1B, requires employers to pay employees one and one-half times their regular rate of pay for all hours worked more than 40 hours per week.

62. Defendants, as the employers of Plaintiffs and the Class members, were required to pay them overtime wages for all hours worked more than 40 hours per week. Defendants failed to pay Plaintiffs and the Class members overtime wages as required by law.

63. As a result of Defendants' unlawful conduct, Plaintiffs and the Class members have suffered damages in the form of unpaid overtime wages.

64. Pursuant to M.G.L. c. 149, § 150 and M.G.L. c. 151, § 1B, Plaintiffs and the Class members are entitled to recover three times the amount of unpaid overtime wages, plus reasonable attorneys' fees and costs.

## COUNT II: VIOLATION OF THE MASSACHUSETTS WAGE ACT - UNLAWFUL DEDUCTIONS

65. Plaintiffs incorporate by reference paragraphs 1 through 64 as if fully set forth herein.

66. Massachusetts law, M.G.L. c. 149, § 148, prohibits employers from making deductions from an employee's wages except in limited circumstances specifically authorized by law.

67. Defendants made unlawful deductions from the wages of Plaintiffs and the Class members, including, but not limited to, equipment (handheld) fees, allegedly damaged or lost product ("shrink") fees, route fees, and administrative fees.

68. These deductions were not permitted by law and were made willfully in disregard from the protections of the Massachusetts Wage Act.

69. As a result of Defendants' unlawful conduct, Plaintiffs and the Class members have suffered damages in the form of unlawful wage deductions.

70. Pursuant to M.G.L. c. 149, § 150, Plaintiffs and the Class members are entitled to recover three times the amount of the unlawful deductions, plus reasonable attorneys' fees and costs.

**COUNT III: VIOLATION OF THE MASSACHUSETTS WAGE ACT - FAILURE TO REIMBURSE BUSINESS EXPENSES**

71. Plaintiffs incorporate by reference paragraphs 1 through 70 as if fully set forth herein.

72. Massachusetts law requires employers to bear the cost of doing business and prohibits them from requiring employees to pay or bear these costs either directly or indirectly.

73. Plaintiffs and the Class members incurred business expenses, including, but not limited to, fuel costs, vehicle costs, vehicle maintenance and repair expenses, and tolls and similar transportation fees, in the performance of work for Defendants.

74. These expenses were incurred primarily for Defendants' benefit and as a necessary part of the job duties of Plaintiffs and the Class members.

75. Defendants' failure to reimburse Plaintiffs and the Class members for these expenses constitutes an unlawful reduction of wages under M.G.L. c. 149, § 148. Defendants' conduct also violates the corresponding Wage Act regulations in Massachusetts requiring reimbursement for travel expenses during the workday. *See* 454 CMR 27.04

76. As a result of Defendants' unlawful conduct, Plaintiffs and the Class members have suffered damages in the form of unreimbursed business expenses.

77. Pursuant to M.G.L. c. 149, § 150, Plaintiffs and the Class members are entitled to recover three times the amount of the unreimbursed expenses, plus reasonable attorneys' fees and costs.

## COUNT IV: UNJUST ENRICHMENT

78. Plaintiffs incorporate by reference paragraphs 1 through 77 as if fully set forth herein.

79. Plaintiffs and the Class members conferred a benefit upon Defendants by working as delivery drivers for Defendants and incurring business expenses on Defendants' behalf for which Defendants had a legal obligation to repay under Massachusetts law.

80. Defendants appreciated and had knowledge of this benefit.

81. Defendants accepted and retained this benefit under circumstances that make it inequitable for Defendants to retain the benefit without payment of its value.

82. As a result of Defendants' unjust enrichment, Plaintiffs and the Class members have suffered damages.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs, individually and on behalf of all others similarly situated, respectfully request that this Court:

A. Certify this case as a class action pursuant to Fed. R. Civ. P. 23;

B. Designate Plaintiffs as representatives of the Class;

C. Designate Plaintiffs' counsel as Class Counsel;

D. Declare that Plaintiffs and the Class members were misclassified as independent contractors and were actually employees of Defendants under Massachusetts Wage Act;

E. Declare that Defendants were statutory employers of Plaintiffs and the Class members;

F. Award Plaintiffs and the Class members damages for all unpaid overtime wages in an amount to be determined at trial;

G. Award Plaintiffs and the Class members damages for all unlawful deductions from their wages in an amount to be determined at trial;

H. Award Plaintiffs and the Class members damages for all unreimbursed business expenses in an amount to be determined at trial;

I. Award Plaintiffs and the Class members treble damages as provided by M.G.L. c. 149, § 150 and M.G.L. c. 151, § 1B;

J. Award Plaintiffs and the Class members prejudgment and post-judgment interest;

K. Award Plaintiffs and the Class members reasonable attorneys' fees and costs incurred in bringing this action;

L. Award Plaintiffs and the Class members damages for unjust enrichment; and

M. Grant such other and legal and equitable relief as this Court deems just and proper.

## JURY DEMAND

Plaintiffs, individually and on behalf of all others similarly situated, hereby demand a trial by jury on all claims so triable.

Dated: May 6, 2025

               Respectfully submitted,

               */s/ Zachary L. Rubin*
               Zachary L. Rubin (BBO # 704485)
               ZLR Litigation, PLLC
               680 E Main Street, Suite A #638
               Stamford, CT 06901
               (203) 212-9983
               zach@ZLRlitigation.com

                  *AND*

                */s/ Matthew D. Patton*
                Matthew D. Patton (BBO # 703798)

Raven Moeslinger (BBO# 687956)
Nicholas F. Ortiz (BBO# 655135)
Ortiz & Moeslinger, PC
One Boston Place, Suite 2600
Boston, MA 02108
(617) 338-9400
mdp@mass-legal.com

*Attorneys for Plaintiffs and the Putative Class*